UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CRIMINAL ACTION NO. V-06-64** |
| § | |
| **TRAFIGURA AG** § | |
| **(Incorporated under the laws of** § | |
| **Switzerland)** § | |

**MEMORANDUM & ORDER**

Pending before the Court is Petitioner, Republic of Iraq's Petition for Adjudication of Validity of Petitioner's Interest in Certain Forfeited Property (Dkt. #14). The Government has filed a Motion to Dismiss Republic of Iraq's Ancillary Petition to Forfeited Funds (Dkt. #19). After considering the petition, motion, responses and applicable law, the Court will DENY the Government's Motion to Dismiss and will allow the parties to conduct discovery on the issues raised by the Petitioner.

**Factual and Procedural Background**

Defendant was indicted for entry of goods into the United States by means of false statements under 18 U.S.C. § 542. Specifically, when selling Iraqi oil not authorized under the U.N. Oil-for-Food program to a Houston company, Defendant warranted that the oil "was obtained pursuant to all necessary approvals and in accordance with all applicable procedures of U.N. resolution 986 and the U.N. Security Council Committee" established by SCR 661. This was a false statement, and the Defendant lacked reasonable cause to believe the truth of such statement. As a result, unauthorized barrels of Iraqi oil were introduced into U.S. commerce on July 2, 2001 and October 16, 2001. Defendant pleaded guilty on May 25, 2006, and an Order of Forfeiture was entered by this Court on that date forfeiting $9,937,551.59 to the United States.

Petitioner, the Republic of Iraq, timely petitions this Court for adjudication of its interest in the assets forfeited by the Defendant, Trafigura AG, to the United States. The monies claimed by Petitioner to be their rightful property stem from two separate instances of "top offs" of unauthorized oil lifted from Iraq and sold to a Houston company. When the Oil-for-Food program was established to allow Iraq to sell its oil for the purpose of providing humanitarian aid to its citizens, the United Nations set up an escrow account, which was to maintain all the proceeds generated from the sale of Iraqi oil, under U.N. Resolution 986. The U.N. authorized a French company, Ibex Energy, to purchase crude oil from Iraq. In April and July 2001, Ibex was authorized to lift 3.6 million barrels of crude oil. Trafigura Beheer purchased this oil from Ibex and payments were made to the U.N. escrow account as required. In May and August 2001, Roundhead, Inc., a subsidiary of the Defendant, contracted with Ibex to purchase approximately 501,000 barrels of crude oil from Iraq. Payments for this oil were allegedly not deposited into the U.N. escrow account. Defendant sold the authorized and unauthorized oil to companies in Houston and South America.

Prior to the Houston company paying the Defendant's invoices for the oil, the Office of Foreign Assets Control instructed the Houston company to deposit the payments into a JP Morgan Chase account in Houston, Texas in November 2001. Petitioner seeks to recover a sum of $9,937,551.59, which represents the amount of money allegedly owed to the Republic of Iraq for oil taken from the Oil-For-Food program, without authorization and without payment.

The Government, in its motion to dismiss the Republic of Iraq's petition, first argues that Iraq has been paid in full for all the oil transported to the United States on the second voyage (and that the $9M figure forfeited to the United States only represents payments on Defendant's invoices

for Iraqi oil transported on the second voyage).[1] The Government claims that the U.N. required pre-payment for the oil. Therefore, Iraq has no legal interest in the money. Second, the Government maintains that the Republic of Iraq lacks standing because it cannot demonstrate it had a vested interest in the oil at the time the crime was committed.

## Legal Standards

### A.   Procedural

Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its alleged interest in property forfeited. 21 U.S.C. § 853(n)(2). At that hearing,[2] both the petitioner and the government are entitled to present evidence, with the burden ultimately on the petitioner to prove its claim by a preponderance of the evidence. *See id.* § 853(n)(5)–(6).

Under Federal Rule of Criminal Procedure 32.2, governing proceedings relating to criminal forfeiture, when a third party files a petition asserting an interest in property to be forfeited, the court must conduct an "ancillary proceeding." FED. R. CRIM. P. 32.2(c)(1). That ancillary proceeding, although occurring in the context of criminal forfeiture, closely resembles a civil action. For instance, the following rules apply to ancillary proceedings:

(A) [T]he court may, on motion, dismiss the petition for lack of standing, for failure

---

[1] The Government has sought permission to file their exhibits under seal (Dkt. #20). However, because discovery has not been conducted, the Court is treating the Government's motion to dismiss as it would a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See infra*. At this stage, the Court will not consider evidence outside of the record. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In the future, the parties are authorized to file their exhibits under seal.

[2] Despite the statutory scheme, courts have determined that a hearing is not always necessary to adjudicate a third party's claims where a petitioner is not able to demonstrate a prima facie entitlement to relief. *See, e.g., United States v. Lavin*, 942 F.2d 177, 179-80 (3d Cir.1991); *United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988).

>to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.
>
>(B) After disposing of any motion [to dismiss] and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.

FED. R. CRIM. P. 32.2(c)(1)(A) & (B). Thus, under Rule 32.2, a motion to dismiss a third party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F.Supp. 282, 285 (D.D.C.1997); *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in its favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994) (citation omitted)).

### B.     Substantive

Under the criminal forfeiture statute: "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The petitioner must establish by a preponderance of the evidence that--

>   (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
>   (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

*Id.* § 853(n)(6). Petitioner proceeds under subsection (A), arguing that it was vested with a superior right, title, or interest to the property at the time of the commission of the acts which gave rise to the forfeiture.

## Discussion

In order to obtain relief from an order of forfeiture, a petitioner must first establish standing. *United States v. Lavin*, 942 F.2d 177, 179-80 (3d Cir.1991). The Government argues the Republic of Iraq lacks standing because it did not have a superior interest in the forfeited assets at the time the crime was committed. Specifically, the Government maintains the Petitioner did not have any interest because the U.N. escrow account was paid for the unauthorized oil. Viewing the facts in a light most favorable to the Petitioner, however, the Court must accept the Petitioner's allegation the unauthorized barrels of oil were never authorized and paid for. Further, while the Court will consider any evidence presented by the Government after discovery is completed, the statements made by the Government in its plea agreement with the Defendant support Petitioner's claim that the U.N. escrow account was never credited for these "top-off" barrels of oil bought by the Defendant. In the Plea agreement, the facts the Government maintained it could prove beyond a reasonable doubt included the statements: (1) "In May 2001, . . . [t]he payment for this quantity of Basrah Light crude oil was ultimately not deposited into the U.N. escrow account in violation of

U.N. Resolution 986. . . . A payment of $5,183,887.43 for the unauthorized crude oil is subject to forfeiture," and (2) On August 1, 2001, . . . [t]he payment to SOMO for this oil was not deposited into the U.N. escrow account . . . . A payment of $4,753,664.16 for the unauthorized crude oil is subject to forfeiture."[3]

Second, the Government contends, even if the U.N. escrow account was not paid, Petitioner would merely be an unsecured creditor with no specified interest in the proceeds from the sale of the unauthorized oil. The Court does not find that Petitioner is simply an unsecured creditor. To be a creditor implies that an arm's length transaction took place. There is no evidence that the Defendant was authorized to lift this oil, and therefore, there will be no evidence of an agreement for future payment. Moreover, unlike the interest of a general creditor, Petitioner claims an interest in a specific asset of the debtor, i.e. the proceeds derived from the sale of unauthorized oil. *See United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 16, 20 (D.D.C. 1997) ("Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest 'in property which has been ordered forfeited. . .'"). The Petitioner alleges essentially that this oil was stolen.[4] While the Court will not comment on the merits of Petitioner's claim, the Court is satisfied that the allegations made by the Petitioner, if proven, may show that its interest was superior to the Defendant's, and therefore, the United States's at the time of the commission of

---

[3] *See* the Plea Agreement, Dkt. #5.

[4] The general rule in forfeiture proceedings is that the law of the jurisdiction that created the property right determines the petitioner's legal interest, while the effect of that property interest, i.e. whether it satisfies the requirements of the federal forfeiture statute– is a matter of federal law. *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996). The Petitioner assumes that Texas law applies in this case; although, it is unclear to the Court whether Texas law or Iraqi law would define the property interest of Petitioner. However, for the purposes of the standing inquiry, this potential distinction is irrelevant.

the crime.

## Conclusion

Viewing the facts in a light most favorable to the Petitioner, the Court finds that the Petitioner has standing to pursue its claim. Accordingly, the Government's Motion to Dismiss Republic of Iraq's Ancillary Petition to Forfeited Funds (Dkt. #19) is DENIED. The Court also finds that discovery is necessary and desirable to resolve the factual issues involved in this claim, and therefore, ORDERS that discovery take place to determine if the U.N. escrow account was ever credited for the unauthorized oil and to determine whether the $9,937,551.59 are direct proceeds from the unauthorized sale of Iraqi oil in the United States. The parties should submit an agreed scheduling order for the Court's approval.

It is so ORDERED.

SIGNED this 26th day of August, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE